Council for Appellant please approach and proceed. Thank you and may it please the court, Chairman Gallus on behalf of the Appellant Youth 71Five Ministries. I'm going to endeavor to reserve five minutes of my time for rebuttal if I may. Your Honors, the motions panel here got it exactly right. The First Amendment does not allow the department to penalize 71Five for hiring members of its own faith. Council, are we reviewing the motions panel decision or the district court decision? The district court decision although the motions panel I would say is highly persuasive. We believe that the motions panel got it right. The department cannot get a free pass to secular grantees that are... Before you go to the merits, can you back up and talk about the procedure at a preliminary injunction stage? There's a significant fork in the road at the top of the decision tree about considering evidence that wasn't presented and actually a claim I think that wasn't presented in the blue brief but was in the reply brief. Could you speak to that? Yeah, with respect to the website evidence, Your Honors. And the claim. And the claim. So the claim was made in the complaint. The claim, I do not see anywhere but I'm delighted to have you point out to me where and if you could just wait till I finish. The claim that I'm looking for is a claim that Youth 71Five was treated differently than other, than secular groups. As opposed to the claim that Youth 75 was treated differently than other faith based groups that didn't require their employees to be of their same faith. Yes, Your Honor. So in the complaint, and this is at ER 3 ER 244-45, there's allegations that the department created exceptions to its non-discrimination rule, that it did not enforce that rule consistently, and that the practical effect excludes only organizations with religious beliefs like 71Five. Can you point me, can you give me the allegation in the motion for preliminary injunction? In the opening brief, Your Honor, that was with respect to the secular websites, that wasn't in there, that's true. But it was submitted in the reply brief in response to arguments that the department itself made. Okay, so you're, alright, so what about the new evidence that appeared in the reply? Yeah, so the question here is whether the district court properly considered it, and whether the motions panel properly considered it. The question is whether the district court abused its discretion by saying he wasn't going to consider it, isn't it? Well, Your Honor, respectfully, the district court did consider it. But it was improper, and then he went on to consider it. That's right. I'm not trying to split hairs here, but we have to be very careful about the proper procedure in the law. So this seems to be really glossed over. So could you slow down and tell me why you think the district court abused its discretion, please? Your Honor, our position is the district court did consider the evidence, it analyzed the evidence, it made determinations based on that evidence. So the question is whether the district court abused its discretion in doing so. We're at the preliminary injunction stage where the evidence, the evidentiary standards are more lenient. This court has said as much. We cite a case, Flathead, which was decided this year, that talks about at the preliminary injunction stage, that injunctions are customarily granted on less formal procedures and evidence, and in fact, the courts can consider even inadmissible evidence and give way to inadmissible evidence. Remember, we're not making final determinations at this stage. We're just making predictions as to the likelihood of success. This is how preliminary injunction motions often go, and that's why there is a relaxed standard. And the touchstone, what this court has said in Flathead and other cases, the touchstone of the analysis is, was the other side given an opportunity to respond to the evidence? And here, the department was given the opportunity to respond, and it did respond, both in briefing, that's at ER 90, and it responded in its motion to dismiss briefing to the specific evidence that was submitted, and it had the opportunity to respond, and did respond to that evidence at the preliminary injunction. Why is it implausible, based on the screenshots, under an abuse of discretion standard, to, for the district court to conclude to the extent it is properly considering the evidence, quote-unquote, in the reply brief, that those secular organizations are not similarly situated? That there's nothing on there that has a similar requirement of a statement of faith or mission to generalize? Why is that implausible, given that all they say is who they target their services to, and they don't say that there's any litmus test for that? Well, so two things. In looking at whether secular activity is comparable for purposes of free exercise clause, what the Supreme Court and this court have said is that comparability is judged against the government's asserted interests. And so we have to look at what is the asserted interest here, why does the department have this rule in the first place? In the certification rule prohibits not just discrimination in employment, but also prohibits discrimination. Right, and even as to, I'll grant you that, so even as to service, although I think that's a question, even as to service, what in those screenshots tell us that it has the same test of faith or mission that 715 does? Well, so we're not looking for a comparator for does this organization discriminate based on religion, we're looking at is the secular organization in violation of the certification rule. Right, and what says that they discriminate based on any of the other protected categories in the same kind of formal manner, right? We're talking, we talk about the divisions policy, we also want to talk about 715 as a formal policy. Where is that in the screenshots? So I want to talk about the specific examples of that, and then I want to talk about legally what this court has said in FCA. So the specific examples, you have an organization by the name of Girls, Inc., this is at 2ER141, who consistent with their name, Girls, Inc., says that they serve only those who identify as girls. You have another organization called Ophelia's Place. Do they say serve only? That's my understanding, because it said Girls, Inc., they serve those who identify as girls. That's your understanding, but again, is it implausible for the district court to conclude that there's not enough there to conclude that it isn't exclusive? Well, the district court said there was no evidence, said there was no evidence, and we submitted evidence to show that they do. The other side has put forward no evidence, and I would like to give you some other examples. So you have Ophelia's Place at 2ER110, they say they serve youth who have experienced girlhood. They have an FAQ page that answers the question, why not boys, explaining why they serve girls. Again, these aren't our words. These are the secular grantees' words. You have another organization with the name Black Parent Initiative, which is consistent with its name. It says it serves only African and African-American parents. But why, I guess, why shouldn't we be looking for a similar, like, and this is a question I'll ask your friends as well in terms of their understanding of this, but 715 has a formal statement of, again, we'll back, we'll generalize faith mission. There's no evidence of a formal statement of mission on the other side or in the secular group's requirement in order to be employed or to be served by them. You're just looking at websites. And had 715 been disqualified on the basis of its website as opposed to the investigation that followed, and your clients can't admission that it does have the statement, that would seem to be apples and apples. But I guess that's the concern, is are these apples and apples? Are there changes here when we're talking about similar, at this stage, under an abuse of discretion and in a logical and plausible standard of review of the district court's factual findings to the extent they're appropriate? So we think there's evidence that shows that quite clearly that they're excluding certain demographics. I've cited a couple. But perhaps maybe more to the legal question of what has this court said in its en banc decision in FCA, is no one here disputes that these organizations, these secular grantees are prioritizing certain demographics over others. That's undisputed. They're tailoring their services to specific demographics. And this was that issue. But that's, I think you're confusing the evidence of the service providers with the evidence of the, in that case, the school. In this case, the division. There's no evidence so far in this record, other than the fact that your client has been rejected, that the division is applying any sort of, certainly no discretionary or policy-based test, distinguishing between them, or has even been given the opportunity to. The secular grantees are in the program. They're currently being funded. The department has been aware of this for... Right, but those are implications. And the question is whether the district court could draw an opposite influence or whether it's implausible to do so. Well, the district court, as the motions panel recognized, the district court erred to say that there was no evidence that these secular grantees discriminate. And I think we have to look at the FCA decision, where you had an example of a secular student group, the South Asian Heritage Club, that prioritized South Asian members. That organization itself said we have no issue with non-South Asian members joining the club. But what this court said en banc in the FCA decision was that it was a facially discriminatory policy. There might be good intentions, good reasons for why the government would allow a secular grantee to have these types of policies, but good intentions do not change the fact that the government is still favoring secular conduct over religious exercise. We, I guess, moved... We're through half your time and on to the first free exercise claim, the general applicability. Thank you for that discussion. I guess I'd like to turn towards the free speech claim and the expressive association. Why... You'd frame this one way, but if we'd frame the question as why must the government fund groups that discriminate against religion in fulfilling the government's own programmatic policies, what in the Constitution requires the division in implementing its own programs through the grant program to fund those who discriminate against religion? I think this is related... I know you're touching on expressive association. I do think it's related to the Trinity Lutheran type of argument where the Supreme Court has said that if the state government is going to open up a generally available government benefit program... But is this a generally... I'm quite familiar with Trinity Lutheran, but is this a generally... I guess that's an important first question. Is this a generally applicable program? It's not available to everyone. It's a discretionary program, and I get that Trinity Lutheran, the program there was... But it was... At least that's a little easier to categorize whether a limited public forum or as a matter of free exercise on that side of the line. But here the program is to advance the government's policy, not to support the policies of the receiving funds. Is that a distinction? I'm not sure, but I need help with this. I don't think it is. It's generally available in the same way that the Trinity Lutheran program was, Espinoza, Carson, the same way. Not every organization could apply to it, but if you're otherwise eligible for it, what the Supreme Court has said, I know you're familiar with the cases, is you can't exclude based on religious character or religious exercise. We think that's what's happening here. To say... But... So here's the other, I guess, key difference is that this is not... And even if we don't get into the youth status distinction that arose later on, this is neither an atheist group nor a Christian group can discriminate based on religion. This is distinguishable on that ground from Trinity Lutheran. Well, I don't necessarily think it is because a distinguishing, and we make this point in our brief, a distinguishing characteristic of religious organizations is that they do prefer members of their own faith. The state of Oregon, its own law, allows 715 to do this. The department itself has awarded 715 grant after grant. But the rule you're urging would have us also require Oregon to fund organizations that are hostile to religion and do not employ or serve people of faith on that basis. Not necessarily, Your Honor. I mean, this is a First Amendment free exercise case, so it's only going to protect religious exercise. That's why I'd open by saying I'm more interested in the expressive association question. Why isn't this government speech or a program... They cite Finley, we've got Rust, you discuss USAID. Yeah. Here's the main problem with the funding condition that they're imposing when we're talking about expressive association. So if we step outside of Trinity Lutheran and we just move... Okay, we're talking expressive association. There's just not a case that has allowed the government to condition it in this way. And what the Alliance for Open Society case talks about is, is the restriction limited? Is it confined to the program itself? And here the department's not confining the restriction to the program itself. It's saying regardless of the position you have, ministerial, it doesn't have to be related to the grant program at all. You cannot prefer members of your own faith. That goes far outside... Well, I guess their response, one of their responses may be that this does not... The reason we don't have a case here is because USAID and these other expressive association cases, potentially even on some readings of Dale, involve speech. And the line that's being drawn here is status discrimination about whether people have religious beliefs or not. So we argue in our brief that the appropriate test was Dale and Hurley, and is it an expressive association? I don't think anyone's disputing that 715 is an expressive association. And would the forced inclusion of a member significantly affect its message? Again, I don't think anyone's disputing that. So then the question is, can they condition the right, can they condition the funds to giving up that expressive associational right? As opposed to tying it to the programs itself. Correct, Your Honor. Yes. Tying the condition to the funded program. Yes, Your Honor. I see I have five minutes. I'm happy to answer more questions, otherwise I'll reserve the remainder. Thank you, Counsel. Thank you. Good morning. May it please the Court and Counsel. Kirsten Nadeau on behalf of the Department. I woke up this morning losing my voice, which is a bit ironic given what we're talking about today. So I apologize in advance. I'm going to do my best here. I intend to focus most of my time on the on the comparable conduct issue. Happy to entertain questions. Can you go to the top of the decision tree where I started? Yes. I think because this is a, we're looking at a preliminary injunction, and of course that's an abusive discretion standard. I am concerned about an argument and evidence were raised for the first time in the reply brief. So I'm looking at here, ER 9, if that helps you. The court here said that plaintiff only raised this argument in its reply brief, depriving defendants the opportunity to subsequently respond. The next sentence says the plaintiff fails to allege these facts in the complaint, failing to provide notice. Right. And then the third sentence says, even if the facts in the in the reply were properly at issue before the court, and then it goes on, as we've just been discussing, to say it was not persuaded. But I don't know how you would have me treat this. You heard the colloquy I have with opposing counsel. Should I look at this as a requested ruling that the district court abuses discretion by saying these are, this evidence and argument raised for the first time in the reply is not properly before the court? Or because he went on to discuss it, should I, is the question whether he abused his discretion by considering it? So I think the department's first argument is that the evidence was not properly before the court. And I think in this case, the district court was, you know, covering its basis, you know, assuming that it might end up this court on appeal and exercising its discretion to address that. To address that evidence. But counsel, once the district court considered the evidence, whether it agreed with it or not, doesn't it become part of the record? It does. And so I think kind of the next piece that is important in looking at the procedural history here is that the kind of evidence that the department could have offered, you know, if it had the ability to more substantively reply. And I think that goes to whether the district court abused its discretion here in concluding that, you know, plaintiff's evidence here was wholly insufficient to demonstrate the kind of discrimination that would require a preliminary intervention. Well, it only had to be sufficient to show a likelihood of success on the merits. That's true. Yes. And I guess, so what did insufficient under what test? So I'd asked your friend these questions about if there were posted on any of these sites, assuming they're, you know, within our consideration, a formal statement of mission that reflected either the recipients or the providers of the service, would the division concede that that would be enough to fail general applicability? Well, I think that would be a much closer question. But again, I think had the department had the opportunity to substantively respond, I would envision additional evidence such as, you know, declarations or perhaps the bylaws of those organizations that that would. What about, so again, as you say, we're just talking about likelihood. Just the fact that, as I understand it, 715 came to the attention of the division through its website and a reporter. The fact that the allegation or a declaration that the division doesn't appear to be as interested in these other exclude, allegedly exclusionary organizations as it is in 715 with that establishment. So we're not even looking into it. So again, I think in that case, plaintiff would need to show was something much more akin to what was that issue in fellowship. Again, you know, here what we have is evidence before the district court that there was a complaint and that the department, when it received a complaint, looked at the website and then contacted plaintiff to confirm that the discrimination is indeed happening. What you don't have is any similar complaint about those secular organizations and then, you know, confirmation from those organizations that that kind of discrimination is happening. And that's where I think the difference here is. The problem with FCA and some of the other cases, the school cases where we have an all-comers policy and it looks on its face like the group, I think one of them was affiliates. And then upon inquiry, the bylaws say that they followed the all-comers policy and anybody could participate in that school club. I don't know that about any of these clubs. And that's the problem I've got. What he's arguing is this, he's got some evidence and he just needs to show a likelihood of success on the merits. So do you want to speak to that? Yes. And I think that goes to the, again, going back to your initial point, this is what procedural posture are we in? It was plaintiff's burden to demonstrate the likelihood of success on the merits. And this court is reviewing for abuse of discretion, the district court findings that that evidence was insufficient. And so this court should defer to that finding because it's supported by the record here. And I think your honor has pointed out the evidence that is missing that does not mimic the evidence of plaintiff's discrimination here. I'll use finding, my clerks get tired of hearing me say this, but I just want to make sure you're using it the way I'm using it. You're referring now to the district court's findings of fact? You say finding or do you really mean conclusion? So I mean that the district court made a factual finding that there was no discrimination here. Or they hadn't shown it. Or insufficient evidence, excuse me. Because the ultimate legal conclusion would review de novo. Yes. The likelihood of success on the merits is reviewed. De novo. All right. So on the, I guess if I could take you up to the expressive association claim, do you have any, and hopefully your friend on reflection might be able to find a case that might help here too. So does the division dispute that 715 is an expressive association? No. Okay. And I guess we've got this, your friend raises this issue that I haven't been able to get to the bottom of in the case law, that the division is prohibiting status-based protected group discrimination against, on the basis of religion. And that has the effect, and let me know if the parties aren't agreed on this, of meaning that they cannot hire people who attest to their statement of faith, which according to them is at the core of, that is what makes them an expressive association. How do you, why isn't that a burden under Dale and some of the other cases? Well, so I think to take a bit of a step back here again, what we're talking about is a grant program. And I think your honor has already expressed that this is the state offering these organizations funding to help fund both existing and new programs to help youth. So the state is not requiring any organization to hire or retain staff or ministers or even volunteers. But they are if, the state is, if they apply for these funds and the conditions is imposed more broadly than the program, than a specific program that is funded by the state. That's true, yes. All right. Why shouldn't we carry the, as your friend suggests, the Trinity Lutheran free exercise piece into expressive association here? I mean, in other words, that you have a government program. It's a grant program. Just like Trinity Lutheran, there's not unlimited funds. The government has to pick and choose. But one basis on which it can't pick and choose is substituting now religion and Trinity Lutheran for expressive association here is the basis of their expressive association without burdening that and subjecting it to some level of heightened scrutiny. Well, first I want to start with, the department strongly disagrees that this policy, this all commerce policy resembles anything like the policies that were at issue in the Trinity Lutheran line of cases. And so I think that's the initial starting point. How does it differ? So the policies that issue in those cases specifically targeted religious organizations. This policy here has the incidental effect of affecting a religious organization. And that's a very different... ...that does not require the, or that does not compel the state to then provide, to apply that policy and provide an exemption. If it's otherwise mutually administered, we don't have kind of a disparate impact type claim. Maybe even as a matter of, at least as of expressive association. That's the department's position here. And so then again, looking at once, once the state has established that the policy itself is not specifically targeting a religious organization, again, it's the incidental effect. Then what you're doing is looking to the factors set out in fellowship and Fulton, which is, you know, is there an express mechanism for granting an exception? Well, that's the free exercise. Right, right. But on the expressive association, you've got, they cite USAID and say, well, you know, he who pays the piper calls the tune, but only as to the tune, not as to everything else the player might be doing. And, and, you know, it's, it's, you know, this, this court, I think, is bound by the Supreme Court's case in Martinez still. I understand that to still be the law. But I think Martinez, I, Martinez seems like, I mean, there are cases there, but Martinez seems to be closer to a government created forum of some kind than your grant and selective subsidy argument needs to take you, right? I mean, so instead, why aren't we, I think you say Garcetti, Finley, Rust. How does this play out? Because I think your brief raises the selective government funding as opposed to a generally available program. I guess first on that, what's your argument that this isn't generally available, that this wouldn't fall into these other questions about tax subsidies or school vouchers? Well, again, I don't think the department's position is that, you know, that this is a completely, that somehow by offering a grant funding, we would, we would not, we would not be looking at whether, you know, the, the Constitution would require the state to, you know, to not have a, for example, to not have a policy that did not allow, you know, that might violate the free expressive claim, excuse me. Right. Well, I mean, the division has a policy it wants to accomplish. It wants to help youth and help them get jobs. And it could do that itself. It is exercising a choice. The case is recognized that it can also essentially through a grant or, I mean, it really is a  It can also contract for those services with others. But on, on what terms, right? Because this is, that's where it might not quite be Martinez. It does seem to start looking like the government funding. And you, after introducing those cases in your brief, seem to pivot to the Martinez case. Yes, good law. How would this come out if it's just the government funding case? Again, back to USAID, is that distinguishable? You're providing funding to, to implement a government policy. But you're doing it in a way that, if it were a direct regulation, might impinge on their expressive association. So I think, first of all, I, you know, I, I don't, and, and I could be wrong. I didn't understand that to be necessarily before the, the district court. So kind of just kind of.  And then again, going back to the procedural posture, you know, whether, you know, we're looking at, you know, did the district court make a, a conclusion here that the plaintiff was unlikely to succeed? You know, did the district court consider that? So I think that's first. And then second, to answer your question, you know, I, I, I think that's a closer question. And I don't, I don't think the court needs, needs to necessarily reach it. Because, you know, again, what we're looking, what we're looking at here is an all comers policy. And, and I don't, I don't understand, you know, any court to have said that, that an all comers policy, you know, whether it be applied in a limited public forum or, or elsewhere would, would violate the free express. But it's not, it can't be an all comer. I mean, we, there is a clause, but how is it an all comers policy when it is, again, you're not providing a forum like a student group in FCA or Martinez. You only want those comers who are going to faithfully implement the government's policy. That's why you have all those other guidelines. And as, as I understood it, at least, the interest that you advance is that this is consistent with advancing the government's policy, as opposed to creating a forum for other groups to express themselves, which is Martinez and FCA. And, you know, that's true. And I guess, you know, that, that, that, that does kind of raise, again, I think I would return to the fact that this is, you know, the, the government is, there's nothing in this kind of, in the record here that plaintiffs are required to apply, required to do anything more than, you know, apply for, you know, excuse me. Is your argument that it doesn't infringe upon their free association? Or is it, is it your argument that they're, they're free to associate the way they want, but they don't need to apply for this fund? That's, I kind of. Which? I believe the second, I was about to say the first, but I believe it's the second. It's that they're, they are free to hire whomever they want, you know, so, so long as they don't expect to get the grant funding from the state or have a. You don't see any, that's why the analogy to Trinity, Trinity Lutheran, right? Right. For any of those government programs, that was the issue. Right. But again, those policies were specifically targeting the religious organizations. And this, as you know, as your honor has, as I think all of you recognize, this policy is, you know, prohibits all kinds of discrimination, not just the religious. But, but with respect to the entire organization, so I guess to maybe, and perhaps I haven't been clear, but is the division's position that having made the grant that the non-discrimination provisions apply to everything that organization does with and without the granted program? In other words, so 715 has a series of programs. Some of them are being funded. It has other programs and other work that it's doing according to its, its faith where it may want to apply. It may want the people doing those programs to abide by its statement of faith. Um, does the government's non-discrimination policy extend to those unfunded programs in the same organization? Okay. Um, so again, I don't, I don't think that this was before the district court, but I want to answer your question. The, um. Well, this is the issue in USAID, which you cited in your brief. The, the, whether the, um. Okay. So whether the policy extends to, um, kind of, uh, other programs, I think, again, it, it go, the, the department's position would be that, you know, an, an, uh, an organization that applies for the grant and that represents that it does not discriminate. I believe this policy would cover all of, all of the, um, services that these organizations are extending. I do think it could, you know, I, I think it, again, I don't have evidence in the record that, um, Youth 71.5 is, um, you know, has, at least to my, to my memory, um, is, you know, has other divisions or, or certain divisions is the wrong word, has other programming where it does not discriminate. And so I think the department understands it to discriminate across all, you know, all programming. And, and the department would carry, would understand also that any of the secular grantees here would similarly, this would apply to, you know, their entire organization. And so I think the, um, whether, you know, so I, so I think the answer is, I can't remember how you phrased it, is no, um, that this, or is, excuse me, is yes, that this policy across the organization, not just the program. Okay. Thank you. I have a question, but I can do it quickly, I think, well, I hope, um, uh, I, I think you're still arguing that, uh, you're, you're resisting the, the premise that this certification policy infringes their associational rights. Yes. Okay. So I'm, I'm, uh, what I understand from their, um, I think, uh, briefing is the claims led to their practicing Christians and the, and practicing Christians are needed to convey their message of sharing God's story of hope with young people and teaching and sharing about the life of Jesus Christ. So these are all groups, I think, agencies intending to help children, youth, um, who are at risk or in, in duress. And this agency's, uh, way of doing that, which seems to be endemic in their mission statement is to, uh, encourage children to follow the path of Jesus Christ. All right. So with that in mind, I'm looking at, I'm wondering what you think about New York State Club Association. The Supreme Court said this, it is, this is, you know what that is?  It's a series of cases, Jaycee's Rotary, we're talking about basically, uh, to summarize clubs that excluded women, right? And the Supreme Court said, it's conceivable, of course, that an association might be able to show that it is organized for a specific expressive purpose and that it will not be able to advocate its desired viewpoints nearly as effectively if it cannot confine its membership to those who share the same sex, for example, or the same religion. And I know this gets to be tricky and there's sort of some mental gymnastics about racial discrimination and whatnot, but, but the Supreme Court wasn't persuaded that the Rotary Club needed to exclude women in order for the Rotary Club to, to exist as it existed, because it was essentially a business networking organization. This organization in, in kind, in kind and in quality is, is very different. So when we look at expressive association, the idea that the, the state of Oregon would be requiring this, this agency to accept among its groups somebody that didn't share their faith, it seems to me to be very different. And I just want to have a chance, you to have a chance to respond to that. And, and I think, you know, I, I have to return to what, what I have already said, which is, you know, I think plaintiff's recourse there is to not apply for the grant. Okay. Thank you for your response. Thank you. Thank you, Counsel Roboto. Thank you, Your Honors. A few quick points from Roboto. I'll try to keep it brief. So just first, the whole purpose of this grant program, the whole purpose of the, the certification role, as the department says, is to ensure equitable access to the programs. What 715 does with its hiring does not affect that interest at all in contrast to what the secular grantees are doing. The department admits as much in page 25 of its brief where it says hiring does not relate to who accesses the program. So 715 is able to participate this without undermining the government's interest. Just briefly on the, the evidence, the secular website evidence, I know we went through some questions there. The department did have the opportunity to respond to this. They found... But the court wasn't persuaded. And it is a finding. Why is it an abuse of discretion for him to say, I don't think you've shown because it was really thoroughly vetted, if you will. That's just my word. Because it was raised in the reply brief. Would that be an abuse of discretion? It's, it was an abuse of discretion as a motions panel said for the district court to conclude that there was no evidence. Okay. So set that aside because we're reviewing the district court's order. All right. And the district court, what's your best shot at that? That he said, this came to me late and I need to have it really vetted because I can't tell what these screens I'm summarizing, to be sure. Paraphrasing. What do we do about that? What's your best response, please? Well, the best response is that the district court then went on to address the evidence. And he wasn't persuaded. He wasn't persuaded that it proved discrimination. But that's the legal significance of the facts. It's not a factual determination. There's no dispute as to what the websites say. It's just, what do they mean? And that's where you get to the FCA cases. What did the court say in Ombok and FCA? If there are groups that are prioritizing some demographics over others. I know what FCA says, but can you tell me, and forgive me, I'm trying to just not use too much of your time. Can you tell me why you think the district court erred? Yes, because the evidence showed that there were secular grantees, the Black Parent Initiative, for instance, that says it only serves African and African-American families. That you have an organization that has an FAQ page that says, why not boys? Does it say, I guess that's right. So 715 says, we only hire people of our Christian faith. You keep inserting the word only. And if you can show that, to the extent we consider this, if you can show that on one of those screenshots, let us know. Does it say only? Yeah, the Black Parent Initiative website, and if you go to our opening brief, it's page 21. There's a link to it. It says they focus solely on African and African-American families. But to Judge Johnson's question earlier, at the very least, it shows that the department is not subjecting these secular grantees to the same level of scrutiny. But how would we know that, right? I mean, you have opportunities to. It wasn't pleaded in your complaint. You have opportunities to develop that record below. But how is the district court supposed to know this? How is the state supposed to have an opportunity to respond at all when they're seeing it in a reply brief? Well, they had the opportunity at the preliminary injunction hearing. They could have put on evidence there. They could have put in declarations. Why is it their obligation if you haven't pleaded it or you haven't put in your own declarations? Why are they obligated to provide facts in response to your argumentation in a reply brief? Well, again, the question is whether they had the opportunity to respond. We're at the preliminary injunction stage. Granted, the evidentiary standards are looser at that stage. And so the question then is, did they have the opportunity to respond? Was there an evidentiary hearing after the reply brief was filed? No, Your Honor. There was a hearing, but no evidence was put on by the parties. And so was there an opportunity? Did the district court give the state an opportunity to respond to the reply brief? Yes, Your Honor. I'll get the sites here. So at 2 ER 53 to 57, you can see the district court asking specific questions to the department about the evidence and the significance of it. So just on the Carson Trinity Lutheran point in Carson, the Supreme Court made clear that it's not just religious status discrimination they're worried about. They say you cannot exclude based on religious exercise as well. My friend on the other side. That's not what that that's what that policy is. This policy doesn't say that, right? It says you can't exclude whether you're whether you're religious or non-religious, right? You can't exclude on the basis of. Yes, but as they're applying it to the religious exercise of 715, 715 is being excluded from the program on account of its religious exercise. So that's how we read the Carson case, where it says that on the free exercise point on the free exercise. Yes. Yes, Your Honor. And then lastly, just a reminder here. There's other other factors, other PI factors. 715 as a result of the motions panel decision is currently in the program. We'd ask that you keep them in reverse the district court reinstate all. Just on that last point, because it's a question I forgot to ask about the status report. We have the government's status report here. Do you see any legally material difference that we should be thinking of with respect to your arguments before us as a result of the new grants? That change anything for us? I think, Your Honor, it just shows that the equity is way in favor of 715. That if they're kicked back out of the program and have to continue paying out of pocket, it's going to jeopardize their program, hamper their ministry. And at the end of the day, that doesn't just hurt a nonprofit ministry. It hurts the kids of Oregon. So we'd ask you to reverse and keep 715 in the program. Thank you. All right. Thank you. Thank you to both counsel for your arguments. The case just argued is submitted for decision by the court. That completes our calendar for today. We are on recess until 930 a.m. tomorrow morning. All rise. This court for this session stands adjourned.
judges: RAWLINSON, CHRISTEN, JOHNSTONE